EXHIBIT 4

STATE OF CONNECTICUT SUPERIOR COURT
JUDICIAL DISTRICT OF NEW LONDON
————————————————————————X

DJENANE POULARD,                          KNL-CV17-5015478-S

                    Plaintiff,            AFFIDAVIT IN
                                          OPPOSITION TO
                                          MOTION TO STRIKE
                                          AND AMEND THE
                                          COMPLAINT

        - against -
CARRINGTON MORTGAGE SERVICES,
DEUTSCHE BANK NATIONAL TRUST COMPANY

                    Defendants.
————————————————————————X

STATE OF CONNECTICUT      }

COUNTY OF NEW LONDON       }

**FILED**

SEP 18 2017

SUPERIOR COURT
New London Judicial District

I, Djenane Poulard, as plaintiff duly sworn, deposes
and says:

1.  I am plaintiff in the above captioned action and write
    in opposition to the defendants' motion to dismiss..

2.  Defendants moved to dismiss the causes of action
    because I purportedly failed to state a cause of
    action.  The defendants' motion should be denied.

### BACKGROUND FACTS

3.  The residence is a one family residential house that I
    lived in for 15 years with my mother and sister.

4.  On or about February 2017 I travelled out of the
    state.  When I returned on March 6, 2017 I discovered

that the premises had been locked and I was unable to enter the house.

5.   I called Carrington to find out if they knew it was locked.   Carrington said they locked the premises, but and would return to give me the keys to get in. However, to date have not done so.

6.   I have personal property worth at least $150,000.00, including but not limited to cash and other personal property.

7.   I never received any documents to state that a foreclosure action against me, nor was there a judgment or any authority that allowed the defendants or anyone to lock the premises..

8.   I have a mortgage contract with the defendants.   The contract called for me not to commit waste.   See Exh 1, paragraph 6.

9.   I adhered to the terms of this contract.   Nevertheless the defendants entered my home when I was out of town for a few days.

10.   Travelling for just a few days, the amount of time one would be out on vacation, should not be justification for changing the locks and can only be viewed as a act of bad faith.

11. I never received any documents to state that a foreclosure action had began against me, nor was there a judgment or any authority that allowed them to take the property.

12. The defendants did not have permission to take property in my home and exercise dominion over said property.

13. The actions of the defendants were conducted in bad faith.

14. If the defendants had not acted in bad faith they at least acted negligently in not securing the premises, or inviting members of the police department to take an inventory of the items in the premises, among other negligent acts.

15. The defendants also stole monies and various item from the premises of my house. They had no consent to take these items or enter the premises.

16. The actions of the defendants, to enter the premises while I was gone for a few days, was deceptive and done in part as a means to take items from my home.

### STANDARD ON A MOTION TO STRIKE

17. There is a significant difference between asserting that a plaintiff cannot state a cause of action and asserting that a plaintiff has not stated a cause of

action, and therein lies the distinction between the motion to dismiss and the motion to strike." Egri v. Foisie, 83 Conn. App. 243, 247, 848 A.2d 1266 (2004). The distinction between the motion to dismiss and the motion to strike is not merely semantic. If a motion to dismiss is granted, the case is terminated, save for an appeal from that ruling. *Baskin's Appeal from Probate,* supra, 194 Conn. 640. The granting of a motion to strike, however, ordinarily is not a final judgment because our rules of practice afford a party a right to amend deficient pleadings. See Practice Book § 10-44.

18.   That critical distinction implicates a fundamental policy consideration in this state. Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court. *Coppola* v. *Coppola,* 243 Conn. 657, 665, 707 A.2d 281 (1998); *Snow* v. *Calise,* 174 Conn. 567, 574, 392 A.2d 440 (1978).

19.   "Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of

procedure. *Greco* v. *Keenan,* 115 Conn. 704, 705, 161 A.
100 [1932]." *Johnson* v. *Zoning Board of Appeals,* 166
Conn. 102, 111, 347 A.2d 53 (1974); see *Andover Ltd.*
*Partnership I v. Board of Tax Review,* 232 Conn. 392,
400, 655 A.2d 759 (1995) (claim of lack of subject
matter jurisdiction).

20. For that reason, "[a] trial court should make every
effort to adjudicate the substantive controversy
before it, and, where practicable, should decide a
procedural issue so as not to preclude hearing the
merits of an appeal." *Killingly* v. *Connecticut Siting*
*Council,* 220 Conn. 516, 522, 600 A.2d 752 (1991).

21. "Because a motion to strike challenges the legal
sufficiency of a pleading and, consequently, requires
no factual findings by the trial court, our review of
the court's ruling...is plenary.... We take the facts
to be those alleged in the complaint that has been
stricken and we construe the complaint in the manner
most favorable to sustaining its legal sufficiency....
Thus, [i]f facts provable in the complaint would
support a cause of action, the motion to strike must
be denied.... Moreover, we note that [w]hat is
necessarily implied [in an allegation] need not be
expressly alleged.... It is fundamental that in

determining the sufficiency of a complaint challenged
by a defendant's motion to strike, all well-pleaded
facts and those facts necessarily implied from the
allegations are taken as admitted.... Indeed,
pleadings must be construed broadly and realistically,
rather than narrowly and technically." Lawrence v. O &
G Indus., Inc., 319 Conn. 641 (2015)

## BREACH OF CONTRACT

22.  Plaintiff has pled a claim for breach of contract.  To
state a cause of action for breach of contract the
plaintiff has to allege the defendants failed to
adhere to the terms of the agreement.   The agreement
is attached as Exhibit 1.  The agreement gives the
defendants permission to enter the premises to stem
waste, but there was not indication of waste here as I
was gone for only a few days.

23.  The defendants' central argument is that they have the
right to enter, and that the complaint doesn't state
that there is a contract between us.  However, they
don't deny they are the mortgage company that gave me
a mortgage.

24.  Any deficiencies in the complaint are repaired by the
proposed amended complaint attached as exhibit 2.

### BREACH OF IMPLIED COVENANT OF FAIR DEALING

25.  Again, I have also pled a claim for breach of implied
     covenant of fair dealing. There was bad faith in the
     actions of the defendants to move into the premises
     within days of me going on vacation.

26.  Also, they took no steps to protect the property, or
     record the personal property they found in the
     premises.

27.  These acts constitute bad faith and breach the implied
     covenant of fair dealing.

### CONVERSION

28.  I pled a claim for breach of contract. Conversion is
     the "unauthorized assumption and exercise of the right
     of ownership over goods belonging to another, to the
     exclusion of the owner's rights." *Aetna Life &
     Cas. Co. v. Union Trust Co.*, 230 Conn. 779, 790, 646
     A.2d 799, 804 (Conn. 1994). To set forth a prima facie
     claim of conversion, a plaintiff must allege: "(1) the
     material at issue belonged to the [plaintiff], (2)
     that [the defendant's act] deprived the [plaintiff] of
     that material for an indefinite period of time, (3)
     that [the defendant's] conduct was unauthorized and
     (4) that [the defendant's] conduct harmed the
     [plaintiff]." *News America Marketing In-*

*Store, Inc. v. Marquis*, 86 Conn. App. 527, 545, 862 A.2d 837, 848 (Conn. App. 2004).

29. The Complaint asserts that the property lost belonged to plaintiff. The complaint can also be read to imply that the defendants had no right to enter the premises, and thus had no right to take the personal property.

30. Also, defendants wrongfully assumed and exercised control over the Premises by changing the locks to the home, rendering it and the personal property held inside, inaccessible to me.

31. In addition, the Complaint alleges that the Defendants played some role in the permanent loss of my personal property from inside the home.

### LEAVE TO AMEND COMPLAINT

32. As stated above, in a motion to strike the courts lean in favor of allowing the plaintiff to amend the complaint.

33. I want to amend the complaint to add claims of negligence, civil theft, breach of CUPTA and additional relevant facts. See Exh 2.

WHEREFORE, I respectfully request that the Court issue the temporary restraining order and preliminary injunction

described above, as well as such other and further relief
as may be just and proper.

I declare under penalty of perjury that the foregoing
is true and correct.

Dated:

September 4, 2017

Djenane Poulard,

CONNECTICUT

73-73-6-0664916
73-73-7-0011030

THIS LOAN MAY NOT BE ASSUMED WITHOUT THE PRIOR APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT, SUCCESSORS OR ASSIGNS -

THE ATTACHED RIDER IS MADE A PART OF THIS INSTRUMENT -

## MORTGAGE

THIS MORTGAGE Made this 25ᵗʰ day of JUNE , 2002 , between
Djenane Poulard, single and Elvie Poulard, single
whose mailing address is: 11 Lake Street, Norwich, CT 06360
as joint tenants with rights of survivorship                , hereinafter referred to as the mortgagor, and
Anthony J. Principi      , as Secretary of Veterans Affairs, an Officer of the United States, whose address is:
Department of Veterans Affairs, c/o Loan Guaranty Officer, 275 Chestnut Street, Manchester, New Hampshire,
hereinafter referred to as the mortgagee.

WITNESSETH:   That the mortgagor, for and in consideration of the sum of
One Hundred and Fifty-seven Thousand, Seven Hundred and Eighty Dollars
($   157,780.00 ) the receipt whereof is hereby acknowledged, does hereby give, grant, bargain, sell, assign and
confirm unto the mortgagee, its successors and assigns, the lands, premises and property situated in
       Norwich      , County of     New London      and State of Connecticut, with the buildings and all other
improvements thereon, known as 115 YANTIC LANE
                           NORWICH, CT 06360
described as follows, to wit:

Two certain tracts or parcels of land, together with the buildings and improvements
thereon, situated in the Town of Norwich, County of New London and State of
Connecticut, being bounded and described as follows:

TRACT ONE
A certain lot or parcel of land, together with all the buildings and improvements
thereon, situated on Yantic Lane, in the Town of Norwich, County of New London
and State of Connecticut, and laid out and delineated as Lot No.91 on that map or
plat entitled "Pleasant View Heights Section 1 Final Sub-Division Property of
Custom Built Homes, Inc. Yantic Lane, Norwich, Connecticut" which map is on record
in the Land Records of the Town of Norwich in Map Book Vol. 9 Pages 8 and 9.

TRACT TWO
A certain tract of parcel of land on a plan entitled "Final Plan, Pleasant View
Heights, Sectiion IV, Property of Custom Built Homes, Inc., Yantic Lane, Norwich,
Conecticut, Frederick M. Hayes Assoc., Inc. P.C., sheet 3 of 7, Scale 1"=40', Date:
June 21, 1971, August 11, 1971, November 16, 1971 and December 7, 1971", being
further bounded and described as follows:

Commencing at the southeasterly corner of Lot #91 as shown on said plan and running
thence south 02° 41' 40" west 20 feet to a merestone; thence on a curve to the
right having a radius of 25 feet for a distance of 39.27 feet to a merestone;
thence north 87° 18' 20" west 72.50 feet to a merestone; thence on a curve to the
right having a radius of 125 feet for a distance of 190.51 feet to a merestone;
thence north 00° 01' 40" east 150.88 feet along Bozrah Drive to a point; thence
south 80° 01' 10" east 54.83 feet to a point; thence south 02° 41' 40" west,
bounded southerly by lot 91, 217.95 feet, thence south 87° 18' 20" east 175 feet
bounded northerly by lot 91 to the point and place of beginning.

Said premises are subject to any restrictions and easements appearing of record, if any.

TO HAVE AND TO HOLD the above granted and bargained premises, with all the appurtenances thereto, unto said mortgagee, its successors and assigns, forever.

The mortgagor covenants with mortgagee, that at and until the execution under seal and delivery of these presents, he is well seized of the premises as a good indefeasible estate in fee simple (or has such other estate as is stated herein); and has good right to bargain and sell the same in manner and form as above written; and that the same are free from all encumbrances whatsoever, except as herein otherwise recited.

Said mortgagor does by these presents bind himself and his heirs forever to warrant and defend the above granted and bargained premises to said mortgagee, its successors and assigns, against all claims and demands whatsoever.

The condition of this deed is such that, WHEREAS the mortgagor is indebted to the mortgagee in the principal sum of One Hundred and Fifty-seven Thousand, Seven Hundred and Eighty Dol
($     157,780.00 ), as evidenced by a promissory note of even date herewith, the terms of which are incorporated herein by reference, with interest from date at the rate of SEVEN
per centum (    7.00   %) per annum on the unpaid balance until paid; the said principal and interest to be payable at the office of Department of Veterans Affairs, 275 Chestnut Street, Manchester, New Hampshire 03101-2411, or at such other place as the holder of the note may designate in writing, delivered or mailed to the mortgagor, in monthly installments of
One Thousand and Forty-nine Dollars and Seventy-one Cents
($     1,049.71 ), commencing on the 1st day of    August     , 2002 , and continuing on the 1st day of each month thereafter until the note is fully paid, except that, if not sooner paid, the final payment of principal and interest shall be due and payable on the 1st day of     July     , 2032 .

Mortgagor, in order more fully to protect the security of this mortgage, does hereby covenant and agree as follows:

   1.  He/She will promptly pay the principal of and interest on the indebtedness evidenced by the said note, at the times and in the manner therein provided. Privilege is reserved to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or one hundred Dollars ($100.00), whichever is less. Prepayment in full shall be credited on the date received. Partial prepayment, other than on an installment due date, need not be credited until the next following installment due date or thirty days after such prepayment, whichever is earlier.

   2.  Together with and in addition to the monthly payments of principal and interest payable under the terms of the note secured hereby, he will pay to the mortgagee, as trustee (under the terms of this trust as hereinafter stated), on the first day of each month until the said note is fully paid:

      (a)    A sum equal to the ground rents, if any, and the taxes and special assessments next due on the premises covered by this mortgage, plus the premiums that will next become due and payable on policies of fire and other hazard insurance on the premises covered hereby (all as estimated by the mortgagee, and of which the mortgagor is notified) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by mortgagee in trust to pay said ground rents, premiums, taxes and special assessments, before the same become delinquent.

      (b)    The aggregate of the amounts payable pursuant to subparagraph (a) and those payable on the note secured hereby, shall be paid in a single payment each month, to be applied to the following items in the order stated;

         I.    ground rents, taxes, special assessments, fire and other hazard insurance premiums;
         II    interest on the note secured hereby; and
         III.  amortization of the principal of said note.

Any deficiency in the amount of such aggregate monthly payment shall, unless made good by the mortgagor prior to the due date of the next such payment, constitute an event of default under this mortgage. At mortgagee's option, mortgagor will pay a "late charge" not exceeding four per centum (4%) of any installment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charges" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured thereby.

3.    If the total of the payments made by the mortgagor under (a) of paragraph 2 preceding shall exceed the amount of payments actually made by the mortgagee as trustee, for ground rents, taxes, or assessments, or insurance premiums, as the case may be, such excess shall be credited on subsequent payments to be made by the mortgagor for such items or, at mortgagee's option, as trustee, shall be refunded to mortgagor. If, however, such monthly payments shall not be sufficient to pay such items when the same shall become due and payable, then the mortgagor shall pay to the mortgagee as trustee, any amount necessary to make up the deficiency within thirty (30) days after written notice from the mortgagee stating the amount of the deficiency, which notice may be given by mail. If at any time the mortgagor shall tender to the mortgagee in accordance with the provisions of the note secured hereby, full payment of the entire indebtedness represented thereby, the mortgagee as trustee, shall, in computing the amount of such indebtedness, credit to the account of the mortgagor any credit balance remaining under the provisions of (a) of paragraph 2 hereof. If there shall be a default under any of the provisions of this mortgage resulting in a public sale of the premises covered hereby, or if the mortgagee acquires the property otherwise after default, the mortgagee as trustee, shall apply, at the time of the commencement of such proceedings, or at the time the property is otherwise acquired, the amount then remaining to credit of mortgagor under (a) of paragraph 2 preceding, as a credit on the interest accrued and unpaid and the balance to the principal then remaining unpaid on said note.

4.    He/She will keep said property free from mechanics' liens, and pay all ground rents, taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions, levied upon said premises except when payment for all such items has theretofore been made under (a) of paragraph 2 hereof, and he will promptly deliver the official receipts therefor to the Mortgagee. In default thereof the Mortgagee may pay the same.

5.    He/She will continuously maintain hazard insurance, of such type or types and amounts as the mortgagee may from time to time require, on the improvements now and hereafter on said premises, and except when payment for all such premiums has theretofore been made under (a) of paragraph 2 hereof, will pay promptly when due any premiums therefor. Upon default thereof, mortgagee may pay the same. All insurance shall be carried in companies approved by the mortgagee and the policies and renewals thereof shall be held by the mortgagee and have attached thereto loss-payable clauses in favor of and in form acceptable to the mortgagee. In event of loss he/she will give immediate notice by mail to the mortgagee, who may make proof of loss if not made promptly by the mortgagor. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the mortgagee instead of to the mortgagor and the mortgagee jointly, and the insurance proceeds, or any part thereof, may be applied by the mortgagee at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In event of foreclosure of this mortgage, or other transfer of title to the said premises in extinguishment of the indebtedness secured hereby, all right, title, and interest of the mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee.

6.    He/She shall not commit or permit waste; and shall maintain the property in as good condition as at present, reasonable wear and tear excepted. Upon any failure so to maintain, mortgagee, at its option may cause reasonable maintenance work to be performed at the cost of mortgagor. Any amounts paid therefor by mortgagee shall bear interest at the rate provided for in the principal indebtedness, shall thereupon become a part of the indebtedness secured by this instrument, ratably and on a parity with all other indebtedness secured hereby, and shall be payable thirty (30) days after demand.

7.    The lien of this instrument shall remain in full force and effect during any postponement or extension of the time of payment of the indebtedness or any part thereof secured hereby.

8.    Upon the request of the mortgagee, the mortgagor shall execute and deliver a supplemental note or notes for the sum or sums advanced by the mortgagee for the alteration, modernization, or improvement made at the mortgagor's request; or for maintenance of said premises, or taxes or assessments against the same, and for any other purpose elsewhere authorized hereunder. Said note or notes shall be secured hereby on a parity with and as fully as if the advance evidenced thereby were included in the note first described above. Said supplemental note or notes shall bear interest at the rate provided for in the principal indebtedness and shall be payable in approximately equal monthly payments for such period as may be agreed upon by the mortgagee and mortgagor. Failing to agree on the maturity, the whole of the sum or sums so advanced shall be due and payable thirty (30) days after demand by the mortgagee. In no event shall the maturity extend beyond the ultimate maturity of the note first described above.

9.    Upon a default in any of the covenants of this mortgage, the mortgagee shall be entitled, without notice to the mortgagor, to the immediate appointment of a receiver of the property hereinabove described, without regard to the adequacy or inadequacy of said property as security for the indebtedness secured by this mortgage; and upon any such default, whether or not a receiver has been appointed, the mortgagee may proceed to collect the rents and benefits of said property and apply the same against any sums secured by this mortgage. Until there is a default under this mortgage, the mortgagor shall have the right to possession of said property.

10.    In any action brought to collect the note secured hereby or to foreclose this mortgage, the mortgagee shall be entitled to recover its costs of collection, including reasonable attorney fees.

11.    Mortgagor waives notice of the exercise of any option granted to the mortgagee herein or in said note.

12.   If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of the parties hereto, and any provisions of this or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations are hereby amended to conform thereto.

The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders, and the term "mortgagee" shall include any payee of the indebtedness hereby secured or any transferee thereof whether by operation of law or otherwise.

If all the covenants, stipulations and agreements of the mortgagor herein contained shall be fully and faithfully performed and said note paid in all respects according to its tenor, then this deed shall be void, otherwise to remain in full force and effect.

The indebtedness secured hereby is the unpaid balance of the purchase price for the property described herein.

This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee unless the acceptability of the assumption of the loan is established either pursuant to the provisions of Section 3714 of Chapter 37, Title 38, USC or by the loan holder if the loan has been sold without recourse.

"Mortgagor" as used herein refers to

IN WITNESS WHEREOF, the mortgagor has hereunto set his hand and seal this 25ᵗʰ day of June , A. D. 2002 .

Signed, sealed and delivered in the presence of:

_____          _____
Witness Lorenzo J. Cichiello               Djenane Poulard

_____          _____
Witness                                    Elvie Poulard

                                          _____

                                          _____

STATE OF CONNECTICUT          )
                              ) ss: Norwich, CT
COUNTY OF New London          )

Personally appeared Djenane Poulard and Elvie Poulard
signer(s) and sealer(s) of the foregoing instrument and acknowledged the same to be his free act and deed before me.

                              _____
                              Lorenzo J. Cichiello
                              Notary Public- Commissioner of Superior Court

DEPARTMENT OF VETERANS AFFAIRS
ASSUMPTION POLICY RIDER--
THIS LOAN MAY NOT BE ASSUMED WITHOUT THE PRIOR
APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS
AUTHORIZED AGENT, SUCCESSORS OR ASSIGNS.

THIS ASSUMPTION POLICY RIDER is made this 30th day of 25TH June , 2002 , and is incorporated into and shall be deemed to amend and supplement the Mortgage ("Instrument") of the same date herewith, given by the undersigned ("Mortgagor") to secure the Mortgagor's Note ("Note") of the same date to          Anthony J. Principi          , Secretary of Veterans Affairs ("Mortgagee") and covering the property described in the Instrument and located at:

115 YANTIC LANE
NORWICH, CT 06360

Notwithstanding anything to the contrary set forth in the Instrument, Mortgagee and Mortgagor hereby acknowledge and agree to the following:

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established either pursuant to the provisions of Section 3714 of Chapter 37, Title 38, United States Code, or by the loan holder if the loan has been sold without recourse.

An authorized transfer ("Assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

    (a)    ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent of the balance of this loan as of the date of transfer of the property shall be payable to the Department of Veterans Affairs at the time of transfer. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument and shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness secured or any transferee hereof, the full indebtedness shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(b). The assumer is not obligated to pay this fee if the Department of Veterans Affairs had sold this loan without recourse.

    (b)    ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the Department of Veterans Affairs or its successors or assigns for determining the creditworthiness of the assumer and subsequently revising the ownership records when an approved transfer is completed. The amount of this charge shall not exceed $300.00.

    (c)    ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the borrower under the terms of the instruments creating and securing the loan, including the obligation of the borrower to the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by the instrument.

Witness our hands and seals this   25th   day of   June          , 2002.

Signed and sealed in the presence of

_____          _____
WITNESS   Lorenzo J. Cichiello                              Djenane Poulard

_____          _____
WITNESS                                                     Elvie Poulard

_____
_____

STATE OF CONNECTICUT SUPERIOR COURT
JUDICIAL DISTRICT OF NEW LONDON

X
DJENANE POULARD,

                Plaintiff,

- against -

CARRINGTON MORTGAGE        SERVICES,
DEUTSCHE BANK NATIONAL TRUST COMPANY

       Defendants.

X

INDEX NO.

**PROPOSED AMENDED
COMPLAINT**

## PARTIES

1.    Plaintiff DJENANE POULARD is an individual, title holder and mortgage holder of the subject premises located at.

2.    Defendant Carrington Mortgage Services, Ltd. is a corporation formulated under the laws of Pennsylvania, and conducts mortgage services in Connecticut.

## BACKGROUND

3.  Plaintiff is the title holder of the property located at 115 Yantic Lane, Norwich CT 06360 (the "premises"), and also the mortgage holder of the property through Carrington Mortgage Services.

4.  The premises is a one family residential house that plaintiff lived in for over 15 years with my mother and sister.

5. Plaintiff had a mortgage contract with the defendants. The contract called for the plaintiff not to commit waste. See Exh 1, paragraph 6.

6. Plaintiff adhered to the terms of this contract. Nevertheless the defendants entered her home when she was out of town for a few days.

7. On or about February 2017 plaintiff travelled out of the state. Upon her return returned on March 6, 2017 she discovered that the premises had been locked.

8. Plaintiff called Carrington to find out if they knew it was locked. Carrington said they did it and would return to give us the keys to get in and to date have not done so.

9. Travelling for just a few days, the amount of time one would be out on vacation, should not be justification for changing the locks and can only be viewed as a act of bad faith.

10. Plaintiff has personal property worth at least $150,000.00 in the premises, including but not limited to cash and personal property. Plaintiff wants access to these properties

11. Plaintiff never received any documents to state that a foreclosure action had began against her, nor was there a judgment or any authority that allowed them to take the property.

12. The defendants did not have permission to take property in plaintiff's home and exercise dominion over said property.

13. The actions of the defendants were conducted in bad faith.

14. If the defendants had not acted in bad faith they at least acted negligently in not securing the premises, or inviting members of the police department to take an inventory of the items in the premises, among other negligent acts.

15. The defendants also stole monies and various item from the premises of the plaintiff. They had no consent to take these items or enter the premises. They did these acts intentionally.

16. The actions of the defendants, to enter the premises while plaintiff was gone for a few days, was deceptive and done in part as a means to take items from her home.

17. Plaintiff have been damaged immensely from the actions of the defendants and seeks.

**AS AND FOR A FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

18. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

19. The defendants breached their contract with plaintiff

**AS AND FOR A SECOND CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

20. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

21. The defendants breached the implied covenant of good faith and fair dealing with plaintiff

## AS AND FOR A THIRD CAUSE OF ACTION

### CONVERSION

22.     Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

23. The defendants converted plaintiff's property

## AS AND FOR A FOURTH CAUSE OF ACTION

### PUNITIVE DAMAGES

24.     Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

25.  The defendants' actions were shocking to the conscience and warrants an award of punitive damages to plaintiff

## 26. AS AND FOR A FIFTH CAUSE OF ACTION

### NEGLIGENCE

27. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

28. The defendants' actions were negligent and warrants an award of  damages to plaintiff

## 29. AS AND FOR A SIXTH CAUSE OF ACTION

### CIVIL THEFT

30. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

31. The defendants stole plaintiff's property and warrants an award of damages.

32. AS AND FOR A SEVENTH CAUSE OF ACTION

CUPTA

33. Plaintiff repeats and re-alleges each allegation set forth above in support of this

count.

34. The defendants engaged in deceptive business practices and thus warrants an

award of damages.

WHEREFORE, the Plaintiff requests that the Defendants be cited and required to

appear and answer herein, and that on final hearing, Plaintiff be awarded judgment in her

favor.

Dated: September 4, 2017
           New London, Connecticut

Djenane Poulard
115 Yantic Lane,
Norwich CT 06360
860-333-7590 (CELL)
860-383-0039 (FAX)

CERTIFICATION

I certify that a copy of this document was mailed or delivered electronically or non-electronically on (date) _09/18/2017_ to all attorneys and self-represented parties of record and that written consent for electronic delivery was received from all attorneys and self-represented parties receiving electronic delivery.

Name:

_STEPHEN I. HANSEN_

Address (No., Street, City, State, zip code):

_TWO International Place 16th floor Boston, MA 02110_

Name:

Address (No., Street, City, State, zip code):

Name:

Address (No., Street, City, State, zip code):

SIGNATURE: _Djeanane Poulard_

PRINT NAME: _DJEANANE Poulard_

DATE SIGNED: _09/18/2017_