UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALENTIN JEAN-LOUIS,<br><br>         Plaintiff,<br><br>  -against-<br><br>CARRINGTON MORTGAGE SERVICES, Does 1-10,<br><br>         Defendants. | Case No.: 19-cv-04302 (ILG) (CLP) |

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND

Kenneth J. Flickinger, Esq.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
10 Bank Street, Suite 700
White Plains, New York 10606
(914) 949-2909
Fax (914) 949-5424

*Attorneys for Defendant*

*Carrington Mortgage Services, LLC*

{V0341585.1}

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALENTIN JEAN-LOUIS,<br><br>                                        Plaintiff,<br><br>-against-<br><br>CARRINGTON MORTGAGE SERVICES, Does 1-10,<br><br>                                      Defendants. | Case No.: 19-cv-04302 (ILG) (CLP) |

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND

Defendant Carrington Mortgage Services, LLC, s/h/a Carrington Mortgage Services ("CMS") hereby opposes the Motion to Remand [ECF 11] (the "Motion" or "Mot.") filed by plaintiff Valentin Jean-Louis ("Plaintiff"). Because there is complete diversity between the parties and the amount in controversy exceeds the jurisdictional minimum, removal was proper, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and the Motion must be denied.

### I.    RELEVANT BACKGROUND AND FACTS

Plaintiff instituted this action by way of a Verified Complaint filed in Queens County Supreme Court on May 29, 2019. *See* Verified Compl. [ECF 1-1]. Plaintiff's verified initial pleading confirms on its face that the amount in controversy exceeds $75,000. Specifically, Plaintiff's initial pleading, as verified by counsel,[1] alleges that cash and other "personal property

---

[1] In relevant part, the Verification to Plaintiff's initial pleading executed by counsel stated:

> I have read the foregoing Summons and Complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and to those matters I believe them to be true.

{K0803346.1}                                                                      1

*worth at least $150,000.00*" belonging to Plaintiff were allegedly stolen in or around February 2017 from a real property in the County of New London, Connecticut, known by the street address 115 Yantic Lane, Norwich, CT (the "Property"). *See* Verified Complaint, ¶¶ 4, 6 (emphasis added). In addition to negligence and conversion causes of action sounding in tort, Plaintiff asserts in the verified pleading a specific claim against CMS entitled "Civil Theft," which is a Connecticut statutory cause of action not recognized in New York which provides for treble damages. *See* Verified Compl., at Count III, ¶¶ 18-19; Conn. Gen. Stat. § 52–564 (Connecticut's civil theft statute, which provides that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, *shall pay the owner treble his damages*." (emphasis added)). Thus, on its face, the initial pleading filed by Plaintiff confirms that the amount in controversy is in excess of $450,000, exclusive of interest or costs. CMS's Notice of Removal filed on July 25, 2019 alleges that the amount in controversy is in excess of the jurisdictional amount based on the allegations in Plaintiff's Verified Complaint. *See* Def.'s Not. of Removal [ECF 1] (hereinafter "Removal"), ¶ 13.

The Summons and Verified Complaint also alleged and confirmed the complete diversity of citizenship between the parties. Specifically, according to the Summons executed by counsel on May 29, 2019, and which was served on CMS, Plaintiff is an individual who resides in Queens County, New York and, thus, Plaintiff was alleged, upon information and belief, to be a citizen of the State of New York. *See* Summons, [ECF 1-1] (stating that Queens County is the location of "PLAINTIFF'S RESIDENCE" (emphasis in original)); Removal, ¶ 10. The Verified Complaint did not allege that CMS was a citizen of the State of New York; rather, the Verified Complaint alleged that CMS was a Pennsylvania corporation which conducts business in Connecticut. *See*

---

Verified Compl. [ECF 1-1], at 6.

Verified Compl., ¶ 1. CMS's Notice of Removal contains a short and plain statement confirming that CMS is not a citizen of the State of New York. *See* Removal, ¶ 9.

Plaintiff filed an Amended Verified Complaint on May 31, 2019. *See* Am. Verified Compl. [ECF 1-2] (the "Amended Complaint"). The Amended Complaint is identical to the Verified Complaint in all material respects save one: the specific language in paragraph 6 of the Verified Complaint alleging that the value of the cash and personal property that was allegedly stolen was "worth at least $150,000.00" was deleted and removed from the Amended Complaint. *Compare* Verified Compl., ¶ 6 *with* Am. Compl., ¶ 6. CMS was served with the Summons and Amended Complaint on or about July 5, 2019 and removed this action to federal court on July 25, 2019. *See* Removal, ¶ 3 & Ex. 3 (affidavit of service).

## II. LAW AND ARGUMENT

### A. Relevant Law Regarding Removal and Jurisdiction.

"… [A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (U.S. 2014) (quoting 28 U.S.C. § 1446(a)). As observed by the United States Supreme Court, "[b]y design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure" because "Congress … intended to simplify the pleading requirements for removal and to clarify that courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Id.* (internal quotations and alterations omitted). As a result of the liberal pleading standard for notices of removal, a removing defendant's allegations – including those related to the diversity of the parties and the amount in controversy – should be and are normally accepted, unless contested by the plaintiff or questioned by the court. *See id.* ("When a defendant seeks

{K0803346.1} 3

federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."). Ultimately, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and that the other requirements for a District Court to exercise jurisdiction over the matter are also plausibly alleged. *Id.*, at 554. Diversity jurisdiction requires an amount in controversy in excess of $75,000 and complete diversity of citizenship between all plaintiffs and all defendants. *See* 28 U.S.C. § 1332(a).

### B. Complete Diversity of Citizenship of the Parties Exists, And Plaintiff Does Not Allege Any Contrary Facts Nor Present Any Contrary Evidence.

Complete diversity of citizenship exists between Plaintiff and CMS, and has existed from the time of the filing of the Verified Complaint through the time of removal, as plausibly alleged by CMS. *See* Removal, at ¶¶ 7-11. Because CMS and Plaintiff agree that the citizenship of any nominal or fictitious parties should not be considered for purposes of determining whether complete diversity exists, *see* Mot., at 5; Removal, at ¶ 11 n.1 (citing 28 U.S.C. § 1441(b)(1)), only the citizenship of Plaintiff and CMS is at issue and must be diverse, which it is.

#### 1. *Plaintiff is a Citizen of the State of New York – And, If Not, The Complaint Should Be Dismissed For Improper Venue.*

According to the Summons, Plaintiff currently resides in Queens County, New York. *See* Summons (stating that Queens County is the location of "PLAINTIFF'S RESIDENCE" (emphasis in original)). As a result, CMS alleged in its removal papers, upon information and belief, that Plaintiff is a citizen of the State of New York. *See* Removal, ¶ 10; *Martinez v. Bynum,* 461 U.S. 321, 331 (1983) ("In general, the domicile of an individual is his true, fixed and permanent home and place of habitation" (internal quotation marks and citation omitted)); *Palazzo v. Corio,* 232 F.3d 38, 42 (2d Cir. 2000) ("An individual's citizenship, within the

{K0803346.1} 4

meaning of the diversity statue, is determined by his domicile."). Notably, in neither the Motion nor in Plaintiff's "Declaration" dated August 5, 2019 submitted in support of the Motion (hereinafter "Declaration" or "Decl.") does Plaintiff or his counsel dispute that Plaintiff is a citizen of the State of New York, as alleged by CMS in its removal papers. *See* Mot., at 5-6; *see generally* Decl. Moreover, neither the Verified Complaint nor the Amended Complaint allege that Plaintiff is not a citizen of the State of New York. *See generally* Verified Compl.; Am. Compl.[2] Thus, based on all filings and evidence presently before the Court, and the lack of any contrary assertion and/or evidence by Plaintiff in his pleadings, Motion or Declaration, Plaintiff is and should be deemed a citizen of the State of New York for diversity purposes as plausibly alleged by CMS in its removal papers.

To the extent Plaintiff argues that he is *not* a citizen of the State of New York, this action should be dismissed pursuant to 28 U.S.C. § 1406(a) and/or Fed. R. Civ. P. 12(b)(3) due to improper venue because there is no connection between the claims asserted and the State of New York whatsoever,[3] as generally briefed in CMS's pending motion to dismiss asserting, *inter alia*, lack of personal jurisdiction [*see* ECF 12]. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013) (observing that both Section 1406 and Rule 12(b)(3) "authorize dismissal ... when venue is 'wrong' or 'improper' in the forum in which it was brought."); 28 U.S.C. § 1391.

---

[2] Plaintiff's pleadings indicate that Plaintiff merely stored personal property at the Property in Connecticut on or around February 2017, and do not plead or otherwise indicate that Plaintiff was or is, at present, a Connecticut citizen. See, e.g., Verified Complaint, ¶ 2 ("Plaintiff maintained his personal property located at the property located at 115 Yantic Lane, Norwich Connecticut (the 'premises')."); Am. Compl., ¶ 2 (same).
[3] Alternatively, CMS should be afforded limited discovery and/or Plaintiff should be ordered to disclose all facts related to his citizenship to allow CMS and the Court to resolve the issue.

{K0803346.1} 5

        2.     *CMS is Not a Citizen of the State of New York.*

CMS's notice of removal contains a short and plain statement confirming that CMS is not a citizen of New York like Plaintiff and, thus, that complete diversity exists. *See* Removal, ¶ 9 (alleging the citizenship of CMS's members and specifically alleging based on such allegations that "CMS is not, therefore, a citizen of the State of New York."). Moreover, neither the Verified Complaint nor the Amended Complaint filed by Plaintiff alleges that CMS is a citizen of the State of New York; rather, Plaintiff pleads that CMS is a citizen of the Commonwealth of Pennsylvania and, possibly, also Connecticut. *See* Verified Compl., ¶ 1 (alleging that CMS is a Pennsylvania corporation which conducts business in Connecticut); Am. Compl., ¶ 1 (same).

Notwithstanding the fact that none of the pleadings before the Court – including both complaints filed by Plaintiff – allege or even suggest that CMS is a citizen of the State of New York, in the Motion, Plaintiff challenges the diversity of the parties based on, essentially, pure speculation regarding CMS's citizenship and the alleged insufficiency of the statements within CMS's notice of removal regarding CMS's citizenship. *See* Mot., at 3 (arguing that CMS "offers no documents, or affidavits to support" CMS's citizenship allegations), 5-6 (arguing that CMS's notice of removal contains unsworn, "conclusory statements" regarding CMS's citizenship that "are not admissible and not persuasive even if they were."). Putting aside the fact that a defendant's notice of removal need include only a short and plain statement plausibly alleging that jurisdiction exists, *see Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 554 – which it does in this case – in order to dismiss Plaintiff's unfounded concerns regarding the admissibility and reliability of the statements in the notice of removal concerning CMS's citizenship and conclusively resolve this issue, CMS files herewith a sworn, admissible affidavit which confirms that neither CMS nor any of its members are a citizen of the State of New York and that

complete diversity exists between the parties. *See* Affidavit of Elizabeth Osterman.[4] Because CMS has now produced competent, admissible evidence demonstrating the fact plausibly alleged in CMS's notice of removal that CMS is not a citizen of the State of New York, the Court should and must reject Plaintiff's unsupported and speculative arguments suggesting that diversity does not exist.

### C. The Amount in Controversy Exceeds the Jurisdictional Minimum.

This matter concerns an amount in controversy in excess of $75,000, exclusive of interest or costs, as plausibly alleged by CMS. *See* Removal, at ¶ 13.

1. *Plaintiff's Initial Pleading Confirms On Its Face That The Amount in Controversy Is Satisfied.*

---

[4] The Seventh Circuit cases cited by Plaintiff suggesting that CMS must disclose the specific names of any of its individual members do not reflect any such rule applicable in the Second Circuit, and rather concern the failure of litigants to provide sufficient evidence to determine the *citizenship* of the parties in question (which CMS has done here) after multiple opportunities and/or specific court orders to do so, and are otherwise distinguishable or inapplicable. *See* Mot., at 6. Specifically, *Guar. Nat. Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 58-59 (7th Cir. 1996), cited by Plaintiff, held that the failure of the parties to identify the *citizenship* of all partners to a limited partnership to allow the court to determine diversity warranted dismissal after the parties had been required to file additional jurisdictional memoranda and were previously warned about the issue by the Court. Likewise, on similar facts in another case cited by Plaintiff, the Seventh Circuit cited the continuing failure of the parties to disclose "the *citizenship* of every partner" of a limited partnership as a basis for dismissal following a number of prior warnings from the court, and only faulted the failure to identify the specific general and limited partners following a specific order and "express directions" from the court to "specify the partners and their citizenship ...." *See Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1073, 1074 (7th Cir. 1992) (emphasis added). The same facts were generally present in *Meyerson v. Showboat Marina Casino P'ship*, 312 F.3d 318, 321 (7th Cir. 2002) (dismissing appeal after "multiple opportunities" and an order to show cause issued to the parties to demonstrate the citizenship of all partners of a partnership, which the parties failed to do). Lastly, *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.* (7th Cir. 2003) is a case where the parties discovered on appeal that diversity did not, in fact, exist, and failed to disclose the citizenship of all individual members of the defendant only after reaching that conclusion. *See* 350 F.3d 691, 692-93. The *dicta* cited by Plaintiff from the Seventh Circuit is thus inapposite to this case.

{K0803346.1} 7

The amount in controversy exceeds the jurisdictional minimum based on the amount pled by Plaintiff in his initial, verified pleading. Where, as here, removal is based on 28 U.S.C. § 1332(a), "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy …." 28 U.S.C. § 1446(c)(2)(A). It is presumed "that the face of the complaint is a good faith representation of the actual amount in controversy." *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 (2d Cir. 2002). Further, "the existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal." *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009).

Here, because the sum demanded in Plaintiff's Verified Complaint is at least $150,000, as a matter of law, the Court need not look any further than the face of Plaintiff's initial pleading, or to extraneous evidence, to confirm that the amount in controversy is satisfied in this case. *See* 28 U.S.C. § 1446(c)(2)(A); Verified Compl., ¶¶ 4, 6 (alleging that cash and other "personal property *worth at least $150,000.00*" belonging to Plaintiff were allegedly stolen from the Property in or around February 2017 (emphasis added)); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010) (recognizing that only "if the pleadings are inconclusive, then the courts may look to documents outside the pleadings to other evidence in the record to determine the amount in controversy."). At the time of removal, the amount in controversy was conclusively satisfied from the face of the Verified Complaint and there was "nothing in the record" suggesting that the amount in controversy pled in the initial verified pleading was "made in bad faith or that the true value of the claim was to a legal certainty less than the jurisdiction threshold[.]" *Mikel*, 625 F.3d at 776. Where, as here, a federal court properly possessed jurisdiction at the time of removal, a plaintiff cannot subsequently deprive the court of jurisdiction that it property possessed through later-filed affidavits or other allegations. *See id.*, at 775, 776 ("… [A] plaintiff cannot seek to

deprive a federal court of jurisdiction by reducing her demand to $75,000 or less once the jurisdictional threshold has been satisfied."). Because the Verified Complaint stated an amount in controversy above $75,000 at the time the case was removed, the jurisdictional threshold here has been satisfied.[5]

2.  *Plaintiff's Vague Amended Pleading Did Not Preclude Removal.*

Plaintiff's amended pleading, which contains no statement of the amount in controversy, did not preclude removal, and Plaintiff's post-removal arguments in the Motion and Declaration that Plaintiff's "damages are not up to $75,000" are simply too little, too late. Decl., ¶ 5. Significantly, the Amended Complaint does not allege that the damages sought by Plaintiff are less than $75,000, or contain any other binding stipulation or representation that Plaintiff does not or will not seek to recover more than $75,000 in this suit under any circumstance, so as to possibly defeat removal or warrant a remand.[6] *Compare Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592, 595-96 (2013) (generally recognizing, in case where pre-removal stipulation limiting amount in controversy was attached to class action complaint, that "federal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal

---

[5] It is of no consequence to the amount in controversy determination if the Verified Complaint was not formally served on CMS, as Plaintiff suggests. *Compare* Mot., at 6 (arguing that CMS "rel[ies] on the Summons and Complaint even though it wasn't served on them [*sic*]") *with* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days *after the receipt by the defendant, through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based …." (emphasis added)). The issue of service generally relates, if at all, to the 30-day period within which a notice of removal must be filed. *See Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010) (holding "that the removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought.").
[6] Nor has Plaintiff explicitly offered to enter into such a binding stipulation, either in the Motion, the Declaration or otherwise, as of the time of this filing.

{K0803346.1}  9

jurisdictional requirement" so long as such stipulations are conclusive, legally binding on all plaintiffs, and not subject to subsequent variation), citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 294 (1938) ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove"). Rather, as Plaintiff concedes in the Motion, "[t]he Amended Complaint does not indicate an amount in controversy" and that when counsel "amended the complaint [he] left the damages indeterminate ...." Mot., at 6, 7.

Here, where the Amended Complaint contains materially identical allegations to those set forth in the Verified Complaint and was filed solely (and without explanation or elaboration within the state court record) to remove the amount in controversy allegation, the amendment raises forum-manipulation concerns and cannot defeat removal. *See Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 474 n.6 (2007) (recognizing that "an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction" in removal cases because "removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment." (emphasis in original)); *accord Gale v. Chicago Title Ins. Co.,* 929 F.3d 74, 77-78 & n.2 (2d Cir. 2019) (recognizing that a court should not only look to an amended complaint to determine jurisdiction in removal cases; "This is because, although a plaintiff is the master of his or her complaint, to allow a plaintiff to divest a federal court of jurisdiction by amending the complaint would allow that plaintiff to frustrate a defendant's federal right to remove the case and to be heard in a federal court.").

Indeed, even assuming that the amount in controversy was erroneously pled as over $150,000 in the Verified Complaint due a miscommunication between attorney and client, *see*

{K0803346.1}  10

Mot., at 1, 7; Decl., ¶¶ 6-7, the Amended Complaint makes no attempt to clarify the record that only approximately $50,000 – and in no event more than $75,000 – is being sought or otherwise limit any recovery by Plaintiff. Indeed, the Amended Complaint is a mirror image, and a re-filed version, of the Verified Complaint, save for the amount in controversy allegation. This is precisely the type of jurisdictional shell-game and artful pleading designed to avoid removal but allow Plaintiff to later claim damages in excess of $75,000 that is disfavored and should not be condoned. *See Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010) ("Requiring a defendant to read the complaint and guess the amount of damages that the plaintiff seeks will create uncertainty and risks increasing the time and money spent on litigation.").

The mere filing of an amended pleading does not render the initial, Verified Complaint meaningless or a legal nullity, as Plaintiff suggests. *See* Mot., at 6-7 (arguing that only the operative complaint at the time of removal matters and that "the court should disregard the initial Summons and complaint."). To the contrary, it is settled law that even a superseded pleading constitutes an admissible admission of a party-opponent. *See U.S. v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("The law is quite clear that [superseded] pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party. A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." (internal citations omitted)). In the present context, the Verified Complaint thus constitutes admissible evidence of the amount in controversy. *See id.* ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as

such it is competent evidence of the facts stated, though controvertible, like any other extra-judicial admission made by a party or his agent.").

Significantly, the allegation in paragraph 6 of the Verified Complaint alleging that "at least $150,000" of cash and personal property is at issue was also not made on information and belief. *See* Verified Compl., ¶ 6. As a *verified* pleading made on personal knowledge, the Verified Complaint thus "has the effect of an affidavit and may be relied upon" by CMS as such for purposes of establishing the amount in controversy. *See, e.g., Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (a "verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment."); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (same).

Altogether, the state court record at the time of removal, including specifically the Verified Complaint asserting that over $150,000 is at issue, thus still supports removal notwithstanding the later filing of the vague Amended Complaint which does not contain any statement of the amount in dispute whatsoever. *See Knowles*, 568 U.S. 588, 593 (for jurisdictional purposes, a reviewing court's inquiry is limited to examining the case "as of the time it was filed in state court").

3. *All Extraneous Evidence Before The Court Confirms That Removal Was Proper.*

Lastly, even in cases where a plaintiff contests a defendant's amount in controversy allegation – unlike this case, where Plaintiff's initial pleading confirms the amount in controversy is met and extraneous evidence is thus not necessary – removal is still proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 553-54

(quoting 28 U.S.C. § 1446(c)(2)(B)) ("… [T]he procedure in order when a defendant's assertion of the amount in controversy is challenged …. [is that] both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."). Here, the preponderance of all evidence before the Court indicates that more than $75,000 is at issue.

First, as noted in the preceding section, the verified allegations in the Verified Complaint concerning the fact that "at least $150,000.00" is in dispute in this action constitutes admissible evidence of the amount in controversy which, in this case, has the effect of an affidavit due to the verified nature of Plaintiff's initial pleading. *See McKeon*, 738 F.2d at 31. To the extent counsel for Plaintiff "made the admission without adequate information, that goes to its weight, not to its admissibility." *Id.*

Second, the Declaration submitted by Plaintiff with the Motion is, at most, ambiguous as to the amount in dispute and claimed by Plaintiff in this lawsuit. While Plaintiff asserts in the Declaration that his total "damages are not up to $75,000", Decl., ¶ 5, the Declaration also confirms that at least "$50,000 in cash" – *plus* an unspecified amount of other "personal items, including clothes and shoes" – are at issue in this case, *see* Decl., ¶ 4. *See also* Mot., at 8 (acknowledging that Plaintiff's damages were left "indeterminate" in the Amended Complaint because they total "$50,000 *plus* the value of his personal affects." (emphasis added)). It is far from a legal certainty that the amount in dispute – which Plaintiff concedes is greater than $50,000 – does not meet the jurisdictional minimum of $75,000 based solely on the Declaration, which provides no specific details whatsoever regarding the nature of the alleged "personal property" that forms the subject of this dispute so as to reasonably assess the value of such items. *Compare St. Paul Mercury Indemnity Co.*, 303 U.S. at 289 ("It must appear to a legal certainty

that the claim is really for less than the jurisdictional amount to justify dismissal."). Moreover, while Plaintiff now alleges via the post-removal Declaration that his economic damages are below the jurisdictional minimum of $75,000, there are insufficient facts in the Declaration or either Complaint to definitively conclude that all damages, including potential compensatory, emotional, or other unliquidated damages, if any, in conjunction with any economic damages, do not exceed the jurisdictional minimum. *See, e.g.*, Am. Compl., ¶ 13 (merely alleging that "Plaintiff have [*sic*] been damaged immensely from the actions of defendants and seeks damages."), ¶ 15 (claiming that CMS's actions "warrant an award of damages to plaintiff."). "Where tort damages are concerned, any doubt about the question of recovery must be resolved in favor of jurisdiction." *James v. DeGrandis*, 138 F. Supp. 2d 402, 422 (W.D.N.Y. 2001), citing *Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 101 (2d Cir. 1966).

Even assuming, *arguendo*, that Plaintiff's actual damages are, in fact, limited to an amount greater than $50,000 but less than $75,000, the true amount in controversy still exceeds $75,000. This is because the Amended Complaint asserts a specific claim against CMS entitled "Civil Theft," which is a Connecticut statutory cause of action not recognized in New York but which provides for treble damages. *See* Verified Compl., at Count III, ¶¶ 18-19; Conn. Gen. Stat. § 52–564 (Connecticut's civil theft statute, which provides that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, *shall pay the owner treble his damages.*" (emphasis added)).[7] Thus, the Declaration confirms that the amount in controversy is in excess of at least $150,000, exclusive of interest or costs, based upon Plaintiff's alleged actual damages of at least $50,000 which are subject to possible trebling as a matter of

---

[7] As stated in CMS's pending motion to dismiss (the relevant portions of which are incorporated by reference herein), Connecticut, and not New York law, governs this dispute. *See* ECF 12.

{K0803346.1}                                        14

Connecticut law in light of Plaintiff's civil theft claim. *See Ajamian v. Zakarian*, No. 1:14-CV-321 DNH/TWD, 2014 WL 4247784, at *7 (N.D.N.Y. Aug. 26, 2014) (analyzing "whether any of Plaintiff's state law claims provide for treble damages" to determine amount in controversy where Plaintiff claimed compensatory damages of $53,000); *see also Gottlieb v. Carnival Corp.*, 436 F.3d 335, 343 & n.10 (2d Cir. 2006) (considering potential trebling provision under TCPA for purposes of amount in controversy determination).

Lastly, to the extent the Court is inclined to look to extrinsic evidence to determine the true amount in controversy, the Court must consider the multiple pleadings filed in the prior, separate Connecticut state court litigation involving this same Property and involving the same allegations of alleged theft and conversion against CMS as Plaintiff again attempts to raise through this later-filed New York action. Quite significantly – and in nearly identical pleadings to the Verified Complaint and Amended Complaint filed in this action – the plaintiff in the Connecticut action asserted that cash and other "personal property *worth at least $150,000.00*" were allegedly contained within and/or stolen from the same Connecticut Property located at 115 Yantic Lane, Norwich, CT in or around February 2017. *See* Flickinger Decl., Exs. 1-3, *Djenane Poluard v. CMS et al.*, Conn. Super. (J.D. of New London), Case No. KNL-CV17-5015478-S, Complaint (dated May 17, 2017; filed May 22, 2017), at ¶¶ 7, 15 (emphasis added); *accord id.*, Amended Complaint (dated Sept. 4, 2017; filed Oct. 3, 2017), at ¶ 10 (asserting same factual allegations and, specifically, that "personal property worth at least $150,000.00 [was] in the premises" in February 2017 and was at issue); [Second] Amended Complaint (dated Sept. 24, 2018; filed Sept. 26, 2018), at ¶ 10 (asserting same factual allegations and, specifically, that "personal property worth at least $150,000.00 [was] in the premises" in February 2017 and was at issue). These three pleadings all asserted that $150,000 of personal property were in, and

{K0803346.1} 15

allegedly stolen from, the same Property at the same time of the events in this lawsuit. *See* Flickinger Decl., Ex. 1-3. The Connecticut plaintiff (who, unlike Plaintiff, was the former mortgagor of the Property) also confirmed in an affidavit that "personal property worth at least $150,000.00, including but not limited to cash and other personal property" was allegedly within and stolen from the Property in February 2017. *See* Flickinger Decl., Ex. 4, Affidavit of D. Poulard in Opp. To Mot. To Strike and Amend the Complaint, ¶ 6 (dated Sept. 4, 2017; filed Sept. 18, 2017). All of these filings from the prior Connecticut action were both matters of public record and also well-known to CMS as a result of the prior lawsuit by the time of removal in this case. Additionally, counsel for Plaintiff in this action had "been retained by the [Connecticut] plaintiff" and was thus involved in the prior Connecticut action, at least to some extent, and advised counsel for CMS of that fact. *See* Flickinger Decl., Ex. 5, July 24, 2017 Email. Thus, at the time of removal in this case, CMS had no reason to doubt that the amount in controversy in this action was anything other than the $150,000 figure asserted in the Verified Complaint because that same $150,000 figure had been repeatedly asserted against CMS in the prior Connecticut action involving the same attorney, the same Property, and the same claims at issue in this case.

Altogether, the preponderance of the extrinsic evidence, even if reviewed, indicates that the amount in controversy has been met in this action.

### III.   CONCLUSION

Based on the foregoing reasons and authorities, Defendant Carrington Mortgage Services, LLC, s/h/a Carrington Mortgage Services respectfully requests that this Court:

1.   Deny the Motion to Remand;

2.   Enter any and all such other relief for Defendant as is warranted and just.

{K0803346.1}                                  16

Dated: White Plains, New York
      August 30, 2019

                              Respectfully submitted,

                              **ECKERT SEAMANS CHERIN & MELLOTT, LLC**

                              **By:** _/S/ Kenneth J. Flickinger_
                                    Kenneth J. Flickinger, Esq.
                              10 Bank Street, Suite 700
                              White Plains, New York 10606
                              (914) 949-2909

                              _Attorneys for Defendant,_
                              _Carrington Mortgage Services, LLC_